# HARFORD MEMORIAL HOSPITAL v. HEALTH SERVICES COST REVIEW COMMISSION ET AL.

[No. 422, September Term, 1979.]

*Decided January 10, 1980.*

The cause was argued before LOWE, MASON and LISS, JJ.

*M. Natalie McSherry,* with whom were *Stanley B. Rohd* and *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*Jay E. Levy, Assistant Attorney General,* with whom were

*Stephen H. Sachs, Attorney General,* and *Stanley Lustman, Assistant Attorney General,* on the brief, for appellee Health Services Cost Review Commission. *John A. Picciotto,* with whom was *F. M. Gloth, Jr.,* on the brief, for other appellee.

LOWE, J., delivered the opinion of the Court.

Having limited success in its appeal to the Circuit Court for Harford County, the Harford Memorial Hospital turns to this Court for respite from a decision of the Health Services Cost Review Commission. That Commission was established by the Legislature initially to cause the public disclosure of the financial position of hospitals, but subsequently to initiate investigation, to review and approve rates and to promote and approve alternate methods of rate determination.

— the rate review —

By expression of its intent, Md. Code, Art. 43, § 568H, and by delegation of its powers, § 568U, the Legislature authorized reviews and investigations purposed to assure purchasers of health care services that:

—hospital costs are "reasonably" related to its service;

—"the hospital's aggregate rates are reasonably related to the hospital's aggregate costs;"

—"rates are set equitably among all purchasers or classes of purchasers of services without undue discrimination or preference."

Pursuant to such review, the statute goes on to say that:

"In order to properly discharge these obligations, the Commission shall have full power to review and approve the reasonableness of rates established or requested by any hospital subject to the provisions of this subtitle. No hospital shall charge for services at a rate other than those established in accordance with the procedures established hereunder." § 568U (b).

Although more substantial powers are spelled out under other circumstances, such as when hospitals petition to increase rates, the issues here arose when on May 17, 1976, the Commission exercised its responsibility to review Harford Hospital's existing rates and charges based on the budget year 1977.

— telephone charges;
admission charges; room rates —

Among other issues not here relevant, the Commission requested that patients' telephone charges be reported by allotted rates rather than computing generally and allowed for in the daily rate charges of the hospital. On that issue, the trial judge affirmed the Commission. We agree with the trial judge for reasons he expressed.

> "The Hospital has been absorbing the costs of patient telephones in its rate structures. It says that it computes the cost at ten cents per day per patient and that it is simply not worth it to segregate this cost from the rates and bill it separately. Blue Cross concedes that if only ten cents were involved, there would be no controversy but, maintains that the Hospital has improperly allocated only $6,000.00 to the patient portion of operator assisted calls instead of what Blue Cross says is the true cost, $67,000.00.
>
> The effect of the Commission's ruling is to get at the bottom of the situation by excluding the cost of patient telephones as determined by its staff after review of the situation at the Hospital. In the divergence between the contentions of the Hospital and of Blue Cross, it does not seem arbitrary, capricious or unreasonable for the Commission to adopt a course of action which would get at the facts."

A second issue affirmed by the trial judge related to the inclusion of an admission charge to each patient admitted to the Hospital. Implicit in this recommendation by the Commission is the commensurate lowering of the daily room

rates which heretofore reflected those revenues for which the admission charge was intended to compensate, *i.e.,* communications, medical staff administration, and medical records, but as pointed out by the judge "ironically" not the admission office. Again we agree with the reasoning of the trial judge as set forth.

> "In greatly oversimplified lay terms it appears that the Commission is concerned that the traditional inclusion of overhead costs in daily room rates and other charges provides hospitals with a financial stake in prolonged patient stays. By assuring the hospital that its overhead costs will, at least partially, be recouped through the admission charge, an incentive will be provided to 'reduce excessive lengths of stay, marginal ancillary utilization, and will foster pre-admission testing.' Looking for ways to 'promote the most efficient and effective use of health care hospital service' is one of the Commission's reasons for existence. Section 568U (c)."

Even if we did not agree wholeheartedly with the Commission, there is little room for change by us since

> "... its judgment is accorded the respect due an informed body that is aided by a competent and experienced staff ... Our inquiry, then, is limited to a determination of whether there was illegality or unreasonableness in the commission's action; when that inquiry is finished, judicial scrutiny ends and the judicial function in the rate rating process is over ... In recognition of our limited role, therefore, we have repeatedly held that a reviewing court may not substitute its judgment for that of the commission."
> *Potomac Edison Co. v. PSC,* 279 Md. 573, 582-583 (1977).

Although this is not a rate *making* question, see § 568U (d), it is a review by a Commission which

> "may promote and approve alternative methods of

rate determination and payment of an experimental nature that may be in the public interest and consistent with the purposes of this subtitle" § 568U (c),

and that appears precisely what they have done thus far. The costs which relate to the services are neither inequitable nor discriminatory, but rather disclose and certify to the reasonableness of the rates by such disclosure. § 568H (1).

— out-of-county patient surcharge —

Because Harford County had floated and was paying the bonded indebtedness incurred in building the Hospital, Harford Hospital proposed a surcharge for out-of-county residents applicable to the principal and interest on bonds being paid by county residents. The surcharge was to be paid to the county; however, the Commission did not approve it because it believed

"Harford Memorial should undertake an extensive fund raising program in Cecil County and the resultant contributions can be used to reduce the operating expenses of the Hospital."

While we are not as enamoured with the Commission's views as we might like, we are compelled to affirm, persuaded again by the cogency of the trial judge's opinion which, encapsulated, said that the Hospital's

"... arguments are unimpressive, for all the Hospital ... proposed was that the Hospital be asked to be a collecting agent for the benefit of Harford County so that Cecil County users would shoulder some of the burdens now shouldered by Harford County users. But even though the concept is eminently fair, it has little to do with hospital rates. Appealing as it is to Harford County taxpayers, it amounts to little more than a forced exaction from Cecil County residents to permit the Hospital to make a voluntary contribution to Harford County's government. The Commission cannot be said to have

exceeded its authority in declining to sanction this arrangement."

— funded depreciation v.
capital facilities allowance —

Although the attempt by the Hospital to recompense the county for its outlay by surcharging its neighboring county residents has some appeal as indicative of a concern for *past* moral obligation, the Hospital seems even more concerned for its future needs. Since we again find the trial judge properly affirmed the Commission in accordance with the standard of review prescribed in the Administrative Procedure Act, Md. Code, Art. 41, § 255 (f), we will use his explanation of the next issue.

"Historically, the Hospital has allowed for the replacement of its capital assets through what it calls standard depreciation and has included the sum so calculated as part of its costs in setting its charges. The depreciation is funded, that is, the money is actually set aside in a fund where it earns income which is plowed back into the fund or used for replacement purchases.

The commission on the other hand has rejected the Hospital's use of funded depreciation and has required the use of a Capital Funds Allowance ('CFA') whereby the Hospital sets aside enough currently to accumulate sufficient money to cover a twenty percent down payment on replacements of facilities and equipment. The rationale is that today's patients should not pay for tomorrow's replacements, or at least should not be required to pay more than is reasonably necessary to keep the Hospital's finances in sufficiently sound condition to make a down payment on future acquisitions. The remaining cost of such acquisitions would be defrayed on a current basis by the patients actually using the facilities.

The Hospital complains that the Commission based its decision, not on facts related to Harford

Memorial's situation, but on the theories outlined in position papers prepared by the Commission's staff and on the prepared testimony of an accountant delivered in another case. The Commission, says the Hospital, has ignored the fact that under the depreciation method, today's patients are paying for facilities they are actually using. This is in contrast to the CFA approach by which today's patient pays for facilities to be used by tomorrow's patients. Furthermore, the CFA approach is more appropriate to preserve the financial integrity of those hospitals which cannot afford replacements because of past failure to provide a depreciation reserve than it is for Harford Memorial which has consistently and soundly funded its future needs. Thus, says the Hospital, the Commission is favoring an absolute rule over the case-by-case approach commanded by *Health Cost Services Review Commission v. Franklin Square Hospital,* 280 Md. 233, 240-241 (1977).

In effect, we have a battle of accounting theories. The Hospital's case, in sum, is that its use of funded depreciation has met the objectives of the CFA approach and is reasonable. The Commission says that the CFA approach is a sounder one and, furthermore, the Hospital's funded depreciation is improperly based because much of it is calculated on funds supplied by the County which shouldn't be included in the Hospital's depreciation base to begin with."

The trial judge decided this question by a single paragraph.

"This Court is ill-prepared to decide a controversy involving the relative merits of two accounting theories. The CFA theory adhered to by the Commission seems plausible and the record facts brought out by the Hospital do not persuade me that the Hospital's historically used method is so superior as to require overruling the Commission. The

Commission has obviously found that the specifics have not rebutted the general rule."

We agree that he reached the right result, but will expand upon his reasoning.

The issue is *not* which of two accounting theories is the best. The accounting methodology is of no concern except as its result is reflected in the rate structure. Obviously, in order to fund the scheduled depreciation, these funds must come from rates which are the primary income of the Hospital. The question then is whether the present hospital patients should provide completely for the facilities for future patients, or whether those patients in the future should pay for the cost of the new facility as it is then being used by them. In light of the fact that the present Hospital is for all practical purposes a gift from the present day Harford taxpayers, in the spirit of fair play it is not unreasonable, inequitable or discriminatory for present day patients — many of whom are the taxpayers donors themselves — to benefit, rather than to preserve that gratuity for future patients when the recycling program comes to an end.

Nor is it the burden of the Hospital to persuade the trial judge that the Hospital's "historically used method" is superior to the one promoted by the Commission. Even if the judge was so persuaded, that is not the test and he would have no right to substitute his judgment for that of the Commission. The Court of Appeals made it abundantly clear in *Blue Cross v. Franklin Sq. Hosp.,* 277 Md. 93, 110-113 (1976), that it is the *Commission's* opinion which of two or more rate structures is best designed to assure fair costs and fiscal integrity, whether one is a standard applied by the Commission or even an experimental procedure developed by it. Unless the Commission's opinion violates one of the criteria permitting reversal or modification in Art. 41, § 255 (f), the trial judge must affirm. The judge so decided and we agree.

That neither the trial judge nor we on appeal may choose, was more expressly recognized in the court's opinion relating to the Hospital's proposal for paying the costs of equipment purchases. The explicit reasoning in the opinion on this aspect

of the rate structure is appropriate as well to the previous issue.

"The CFA concept applies not only to buildings but also to equipment. It appears that the Hospital's cash requirements for equipment amounted in 1977 to some $519,100.00 but the CFA allowance was but $214,256.00. Part of the resulting shortfall was to be met by use of interest income on building and equipment funds and the addition of leasing costs to the CFA formula allowance, but there still remained some $89,918.00 of cash requirements to be included in the rate structure. The Commission staff recommended that this $89,918.00 be allowed because the Hospital had spent below the current year's CFA in the three prior years. Because equipment purchases vary widely from year to year, the Commission staff felt it reasonable to permit the Hospital to include the $89,918.00 in current rates.

Blue Cross, however, opposed the staff recommendation and asked that the equipment purchases in excess of the CFA be paid from the Hospital's considerable surplus, which had built up over the years. This invasion of the Hospital's principal would reduce the total funds on hand from 124 days of expected revenue to 118 days of expected revenue. Since the Commission had ruled in the South Baltimore General Hospital case that reducing principal to 35 days of expected revenue was reasonable, Blue Cross argues that there is nothing unreasonable in requiring the Hospital to dip into its surplus to the extent of only six days of expected revenue and that to do otherwise, would be unfair to today's patient.

The Commission agreed with Blue Cross and denied the extra allowance. The Hospital says that its way of doing things was reasonable, just as the Commission's own staff had found, and that in the absence of competent evidence that the expense was

unreasonable, the Commission had no right to adopt Blue Cross' theory.

But my task is not to choose between two alternatives if both of them are reasonable. There is nothing inherently unreasonable about the Commission's decision to force the Hospital to use some of its accumulated financial fat to defray the expenses in question rather than to recoup them through current patient charges. It is true that by doing so the Commission has made present patients the beneficiaries of money paid by past patients to the Hospital's depreciation reserve and of the largess of charitable donors. But the alternative would be to charge present patients more money merely to keep the Hospital in its present state of adiposity. The slight decrease in financial caloric intake ordered by the Commission seems unlikely to be detrimental to the Hospital's economic health. Presented with two reasonable alternatives, the Commission chose that which it considered to be the optimum one. Thus, with echoes of the ultimate commandment in Orwell's *Animal Farm,* some rates are more reasonable than others and it is within the Commission's prerogative to declare them so. *Blue Cross v. Franklin Square Hospital,* 277 Md. 93, 112-113." (Footnote omitted).

Since it is the Commission that is empowered to approve *that* rate *structure which it finds* to be most reasonable under the circumstances, even though the Hospital proposal may be reasonable also, the burden to reverse is not to prove an imbalance of reasonableness on the side of the Hospital proposal but rather to negate the reasonableness of the Commission's proposal. The statutory standard which the Commission must apply before approval is not only that rates be reasonable in the light of services and costs, but also that rates be set equitably and without undue discrimination.

We must not lose sight of the fact that these accounting concepts are not to be viewed in isolation but rather as one facet of the rate structuring procedure. In viewing the rate

structure as a whole, the Commission may consider each of the items which make up the rate structure. In weighing the merits of these items, the Commission may compare the Hospital's proposals with others of its own and, despite neither being unreasonable, inequitable nor discriminatory, "promote" its own alternate method of rate determination (even if it is experimental) by rejecting the Hospital's program. § 568U (c). As established by *Blue Cross, supra* at 110-111,

> "[i]f, in the Commission's opinion, a proposed rate structure is designed to further the purposes of the statute less effectively than another rate structure would, then it would be proper for the Commission to reject the proposed rates.
>
> The provisions of the Act reflect the legislative intent that the Commission have broad authority over the financial affairs of hospitals and that it should only approve those rates *best* designed to assure fair costs and fiscal integrity."

Merely because the other rate structure is one established as a benchmark by the Commission does not preclude its use by the Commission in a comparative sense. The Commission has not thereby established an absolute rule applicable to all hospitals under all circumstances; it simply has applied a standard by which to review as it investigates hospitals on a hospital-by-hospital basis. See *Health Serv. Cost v. Franklin Sq.,* 280 Md. 233, 240-241 (1977).

— cross subsidization —

The Hospital's proposed rate structure established a uniform daily room rate of $73.00 for three departments of the Hospital:

1. Medical and Surgical
2. Pediatrics
3. Obstetrics and Gynecology.

This uniformity was based upon virtually identical services and care. The Commission denied the right to charge a

uniform rate despite the Hospital's practice of interdepartmental use dependent upon availability. When a department was overcrowded and another had vacancies, therapeutics notwithstanding, the patient was provided a bed where the vacancy existed. It also proposed a reduced rate as compared to actual cost for the Intensive Care Unit and for its Coronary Care Unit. There appears to be no question but that these rates would nonetheless "permit the institution to render effective and efficient service in the public interest . . . ." Art. 43, § 568V.

The Commission rejected this proposal, first encapsulating the Hospital's reasoning for increasing the medical and surgical department by $5.00 over costs to effect reductions in the more expensive units.

> "The Hospital's principal arguments for requesting cross-subsidization are:
> a. without subsidization rates in certain areas place a severe financial burden on patients least able to pay, and
> b. increased bad debts will result from unsubsidized charges."

Responding to this the Commission pointed out that:

> "The Hospital, however, provided no substantive evidence to support these claims. In particular, upon cross examination Hospital representatives stated that:
> a. the percentage of financial classes of patients utilizing the various centers was not available.
> b. the percentage of bad debts generated by each class of purchaser (e.g. obstetrical patients) was not available.
>
> Without such supporting facts and cogent arguments as to why cross-subsidization should be allowed, the Commission believes that it cannot approve discriminatory pricing practices. Therefore, the Commission concurs with the staff and views the rate structure proposed by Harford Memorial as unduly discriminatory."

At first blush it is hard to gainsay the Hospital's proposed rate schedule which in its extreme increases two departmental rates by only $5.00 in order to effect a savings in two others of nearly $50.00.

| "Hospital's rates | | | Commission's rates | | |
|---|---|---|---|---|---|
| Medical/Surgical | $ 73.00 | per day | $ 67.11 | per day |
| Pediatrics | 73.00 | per day | 80.13 | per day |
| OB/Gyn | 73.00 | per day | 98.09 | per day |
| ICU | 148.00 | per day | 202.43 | per day |
| CCU | 143.00 | per day | 194.43 | per day" |

The Hospital contends here that the burden of proof was upon the Commission to show that the Hospital's rates or accounting practices were unreasonable before it could refuse to approve those rates or practices. But that would be contrary to the very role of the Commission as a quasi-judicial body. As pointed out in *Blue Cross, supra,* it is the *Commission's* opinion of reasonableness that prevails, and from our interpretation of *Blue Cross,* the burden on appeal is not only upon the Hospital but it is a heavy one indeed.

Recognizing the necessity of expertise in judging reasonableness of controls within a regulated industry, the Legislature made the standard of administrative review especially stringent. It is substantially greater than the judicial standard of "clearly erroneous" with which our rules protect the lower court's decisions. The Legislature said that:

"The court may affirm the decisions of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Unsupported by competent, material, and

substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious." Art. 41, § 255 (f).

While we may not have agreed in every instance had we comprised the Commission, we are unable to find unconstitutionality, ultra vires conduct, unlawful procedure, error of law, an evidentiary vacuum or arbitrary or capricious decisions. We may not reverse.

That is precisely what the trial judge correctly decided below and clearly stated in his opinion.

"The Hospital contends that '[w]here rates in one department are decreased by only $5.00 per day, while those of other departments are increased by $15.00 to $50.00 per day, the financial burden to, at the minimum, the 8% uninsured patients in all departments will be radically increased, and with it the probability of bad debts.' The Hospital, however, was unable to substantiate these claims. Neither the percentage of financial classes of patients using the various centers nor the percentage of bad debts generated by each class of purchaser was made available to the Commission.

Under Article 43, Section 568H, (2), Annotated Code of Maryland, Volume 4B (1957 Repl. Vol., 1977 Cumulative Supplement), the Commission is charged with the responsibility of assuring 'all purchasers of health care hospital services . . .; that rates are set equitably among all purchasers of services without undue discrimination.' It is the Commission's position that to charge a patient in part for a service he does not receive constitutes undue discrimination.

The Hospital argues that it is trying to provide a wide variety of services at a cost affordable to its class of patients and that the Commission has failed to establish that its rates are unduly discriminatory. The Commission has 'the power to approve those rates which it considers best designed to effectuate the purposes of the statute' and '[t]he Commission

is not required ... to defer to the hospital's view of reasonableness in cases of conflict, ... If, in the Commission's opinion, a proposed rate structure is designed to further the purposes of the statute less effectively than another rate structure would, then it would be proper for the Commission to reject the proposed rates.' *Blue Cross of Maryland, Inc. v. Franklin Square Hospital,* 277 Md. 93, 110 (1976).

It is evident from the record that the Commission considered the arguments of the Hospital but found them unsubstantiated in fact and in theory. Its findings were not, as the Hospital would have us believe, based on an inflexible dogma that rates must follow costs for otherwise 'undue' discrimination would result. It says that arbitrary charges *not* based on costs or some other persuasive factor are undue 'simply because if discrimination is to be thought of as 'due discrimination' then there must be some reason for it' (James M. Kelly testimony, p. 1). If the reasons have been supplied, which the Hospital was unable convincingly to do, the Commission has been persuaded to permit cross-subsidization. (Id. p. 2, cross-examination, p. 9-13). There is no logical unsoundness in the Commission's philosophy that cost-based charges are more likely to be non-discriminatory than ones using cross-subsidization. To require specific facts to rebut this philosophy is not asking too much in view of the Commission's statutory responsibilities. Section 568U(a) and (c), Section 568V(2).

The Hospital also contends that the Commission is imposing an absolute rule, namely, that rates should be based upon the economic costs of each revenue center through the application of accounting principles, rather than making their determination on a case-by-case basis.

'Whether a hospital's rate is fair to purchasers of health care services and also will assure the hospital's fiscal integrity must of

necessity be determined on a case-by-case basis. Absolute rules concerning cost factors, applicable to all hospitals under all circumstances, . . ., are therefore inappropriate.' *Health Services Cost Review Commission v. Franklin Square Hospital,* 280 Md. 233, 241 (1977).

The Commission did, however, consider the Hospital's rationale and found it unsupported by facts or cogent arguments. Given the lack of proof, the Commission, by necessity, relied on its general policy of rate structuring and there is insufficient evidence in the record for this Court to say that decision was clearly wrong.

'A reviewing court may, and should, examine any conclusion reached by an agency, to see whether reasoning minds could reasonably reach that conclusion from the facts in the records before the agency, by direct proof, or by permissible inference. If the conclusion could be so reached, then it is based upon substantial evidence, and the court has no power to reject that conclusion.' *Commissioner, Baltimore City Police Department v. Cason,* 34 Md. App. 487, 508 (1977)."

At argument, counsel for the Hospital stated that the underlying question to be decided on this appeal was whether the Commission adhered to the mandate of the Court of Appeals or substituted its own standard contrary to the admonition in *Health Serv. Cost v. Franklin Sq.,* 280 Md. at 240-241.

"Although the parties in their briefs differed on the questions of whether the inclusion of paragraphs 3 and 4 in the modified judgment is inconsistent with our prior mandate, it became clear at oral argument that both sides are in basic agreement as to the proper procedure in future rate review cases. Both agree that the Commission must determine on a

hospital-by-hospital basis the most reasonable rate structure. Moreover, both seem to agree that no absolute rule, applicable to all hospitals under all circumstances, pertaining to the use of the capital facilities allowance or depreciation, or the reasonableness of the inclusion of costs of excess facilities, is proper. They take the position that these matters must be determined on a case-by-case basis, subject to judicial review under the Administrative Procedure Act, Art. 41, §§ 255, 256. We think that this position, adopted by both sides at oral argument, is consistent with our prior holding in *Blue Cross* and with statutory provisions relating to the Commission.

. . .

Absolute rules concerning cost factors, applicable to all hospitals under all circumstances, as found in the modified order, are therefore inappropriate. Whether the use of the capital facilities allowance or depreciation is more reasonable, or whether the inclusion of costs for excess facilities and services unrelated to patient care is reasonable, must be determined by the Commission on a case-by-case basis."

This simply means that the Commission may not arbitrarily impose accounting formulae across the board on all hospitals of a like type or size. That was the original issue in *Blue Cross, supra* at 96-97. It does not, however, preclude the use of a prestudied procedure prepared by the Commission to be applied as a standard or yardstick with which to compare a hospital's procedure when that hospital is being individually reviewed. When laid side by side, the Commission may disapprove a hospital's procedure and "promote and approve alternative methods of rate determination and payment of an experimental nature . . . ." Md. Code, Art. 43, § 568U. We need hardly add that the power to review and determine the reasonableness of a particular rate structure necessarily includes the power to review the

individual cost factors of which the rate structure is comprised. *Health Serv. Cost v. Franklin Sq.,* 280 Md. at 239.

In addressing the depreciation issue, the trial judge stated that:

> "This Court is ill-prepared to decide a controversy involving the relative merits of two accounting theories."

He may well have generalized that no court is well prepared to weigh the nuances of rate making in any regulated industry. That is undoubtedly the reason why the Legislature provided so protective a shield around the determinations of the regulatory commissions. The court's statutory role upon review goes very little beyond its inherent power of review to prevent illegal, unreasonable, arbitrary or capricious administrative action. See *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 300 (1967); see also *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 501-502 (1975). We find no such conduct on the part of appellees. Primarily for the reasons stated by the trial judge in his opinion, we affirm his judgment.

> *Judgment affirmed.*
> *Costs to be paid by the appellant.*