Dear Mr. Schwemin,
The Attorney General has received your request for an official opinion asking, in effect:
 1. Under 59 O.S. 353.21 (1981), when a pharmacist substitutes a drug for the prescribed drug, what is the range of potential substitutions?
 2. Is a third party payor, such as an insurance company, a "purchaser" for purposes of authorizing substitution of a prescribed drug under 59 O.S. 353.21 (1981)?
 3. Are blanket authorizations to substitute an alternative for the prescribed drug valid under 59 O.S. 353.21 (1981)?
 I.
Substitution of drugs for the specifically prescribed drug is unlawful except under certain circumstances set forth in 59 O.S. 353.21 (1981), which reads in its entirety as follows:
 "Substitution of drugs or medicines unlawful. It shall be unlawful for any pharmacist being requested to sell, furnish or compound any drug, medicine, chemical or other pharmaceutical preparation, by prescription or otherwise, to substitute or cause to be substituted therefor, without authority of the prescriber or purchaser, any other drug, medicine, chemical or pharmaceutical preparation."
59 O.S. 353.21, remains as it was originally passed in 1961. It predates and is different in emphasis from the generic drug substitution legislation passed by many states in the 1970's. For example, the Generic Drug Act passed by the New York legislature in 1977, provides that the Commissioner of Health shall establish and publish a list of drug products which have been certified by the Federal Food and Drug Administration as safe and effective for their labeled uses and which are not questioned by the FDA as failing to meet bioequivalency requirements. New York Public Health Law (McKinney) 206(1)(a). If the physician signs the prescription line indicating "substitution permissible," then the pharmacist must inform the patient that the pharmacist will substitute a less expensive generic drug product on the list established by the State's Commissioner of Health. N.Y. Education Law (McKinney) 6810(6), 6816-a. In Pharmaceutical Society of the State ofNew York, Inc. v. Lefkowitz, 586 F.2d 953 (2d Cir. 1978), the Second Circuit examined New York's Generic Drug Law, expressing its purpose in terms applicable to generic drug laws in general:
 "The objective of the New York legislation is to regulate the sale of drugs to the limited extent of preventing the patient-consumer from being forced to pay the higher price of brand name drugs when less expensive generic equivalents are available and his physician is willing to permit use of the substitute." 586 F.2d at 958.
Another typical feature of generic drug laws is that substitution must always be authorized by the prescriber. That is, under the generic drug laws, substitution could not be made on the authority of the purchaser alone. The Oklahoma provision differs in this respect.
Oklahoma's statutory provision on substitution of drugs does not specifically articulate the range of drugs which a pharmacist may substitute, nor does it provide for a list of interchangeable drug products. This does not mean that a pharmacist may substitute any drug in his unfettered discretion. "Prescription" is defined in 59 O.S.353.1(7)(a) (1984) in pertinent part as follows:
 "`Prescription' means and includes any order for drug or medical supplies written or signed or transmitted by word of mouth, telephone, telegraphy, or other means of communication by a legally competent practitioner of medicine, dentistry, osteopathy, optometry certified by the Board of Examiners in Optometry to administer ocular-pharmaceutical agents as authorized by 59 O.S. 581 and 59 O.S. 584 of the Oklahoma Statutes, podiatry, or veterinary medicine, licensed by law to prescribe and administer such drugs and medical supplies intended to be filled, compounded, or dispensed by a pharmacist. Such prescription received by other than written communication shall be promptly recorded in writing by the pharmacist. The record made by the pharmacist shall constitute the original prescription to be filed by the pharmacist." (Emphasis added).
A review of the statutes does not reveal authority for pharmacists to prescribe. "Pharmacist" is defined in 59 O.S. 353.1(2) (1984) as follows:
 "`Pharmacist' means a person registered by the Oklahoma State Board of Pharmacy to prepare, compound and dispense drugs, medicines, chemicals and poisons."
Generally, a statute should not be construed any more broadly, or given any greater effect than its own terms require. American First Title Trust Co. v. First Federal Savings Loan Association of Coffeyville,Kansas, 415 P.2d 930, 939 (Okla. 1966). In view of the absence of lawful authority of a pharmacist to prescribe, the authority to substitute a drug for the specifically prescribed drug must be construed to allow substitution of only those therapeutically equivalent drugs with the same chemical or generic name as the prescribed drug.
 II.
Your second question concerns who is a "purchaser" for purposes of authorizing substitution for the prescribed drug. Since the term "purchaser" is not specifically defined in the statute, 25 O.S. 1 (1981) applies: "Words used in a statute are to be understood in their ordinary meaning, except when a contrary intention plainly appears[.]"
The ordinary meaning of the term "purchaser," without further descriptive language, would not include third party payors such as insurers. In Blue Cross of Maryland, Inc. v. Franklin Square Hospital,352 A.2d 798 (Md. 1976), the court, holding that a health insurer was not a "purchaser" under Maryland's Health Services Cost Act, stated:
 "A statute should be construed according to the ordinary and natural meaning of the language used, absent some indication that the Legislature intended to use a term in an abnormal sense. (Citations omitted). In our view, the ordinary and natural meaning of the term `purchasers,' with no further descriptive language being employed, would not encompass an insurer like Blue Cross. Instead, a `purchaser' of a service would normally refer to the person obtaining that service, absent some clear indication to the contrary. While a consumer of a service, instead of having to pay for the service with his own funds, may choose instead to pay insurance premiums and have the insurance company assume the obligation of paying for the service he receives, the fact remains that it is the consumer who is ordinarily deemed the purchaser." 352 A.2d at 806. (Emphasis added).
Thus, a purchaser of a service, in this case the filling of a prescription, would normally refer to the person obtaining that prescription, absent some clear indication to the contrary. It is the consumer who is considered the "purchaser" and who may authorize the pharmacist to substitute a drug in place of the specifically prescribed drug. This interpretation is further supported by 59 O.S. 354 (1981), which states in part that: "A prescription is the property of the patient for whom it is prescribed[.]"
Therefore, third party payors such as insurers are not "purchasers" who may authorize a pharmacist to substitute a drug for the prescribed drug.
 III.
Your third question asks whether blanket authorizations to substitute an alternative for the prescribed drug are valid under 59 O.S. 1981, 59O.S. 353.21. The statute does not provide for blanket authorizations to substitute. On the contrary, 59 O.S. 353.21 sets up an exception to the pharmacist's general duty to dispense the drug product exactly as written by the prescriber. Since a statute should not be construed any more broadly than its terms require, American First Title and Trust Co., v.First Federal Savings Loan Association of Coffeyville, Kansas, supra, and, since 59 O.S. 353.21 does not specifically provide for blanket authorizations to substitute, we conclude that there must be an affirmative choice to substitute by either the prescriber or the purchaser on each prescription where a pharmacist replaces the prescribed drug with a therapeutically equivalent drug with the same generic or chemical name.
It is, therefore, the official opinion of the Attorney Generalthat:
 1. Under 59 O.S. 353.21 (1981), a pharmacist may, upon authority of the prescriber or the purchaser, substitute a therapeutically equivalent drug with the same generic or chemical name as the prescribed drug.
 2. A third party payor is not a "purchaser" under 59 O.S. 353.21 (1981) for purposes of authorizing a pharmacist to substitute a drug for the prescribed drug.
 3. Blanket authorizations to substitute a drug for the prescribed drug are not sufficient. Rather, the prescriber or the purchaser must affirmatively choose to authorize substitution on each prescription where the pharmacist replaces the prescribed drug with a therapeutically equivalent drug with the same chemical or generic name as the prescribed drug. 59 O.S. 353.21 (1981).
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
PATRICIA GERRITY, ASSISTANT ATTORNEY GENERAL