864 A.2d 300

**Debbie L. (Brooks) BURDICK**

**v.**

**George BROOKS, III.**

**No. 0081, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Dec. 30, 2004.

520

Thomas G. Harrison, Bel Air, for appellant.

Michael D. Fraidin, Baltimore, for appellee.

Panel DAVIS, ADKINS, MEREDITH, JJ.

ADKINS, J.

Appellant, Debbie Burdick, challenges the Circuit Court for Harford County's order modifying *pendente lite* custody and child support, assigning several errors. During a status conference, the circuit court transferred temporary custody of

three out of four minor children to Appellee, George Brooks, and decreased the child support obligation of Brooks from $800/month to $200/month without applying the Child Support Guidelines. Burdick presents three questions for our review, which we have reformulated below:

I. Did the Circuit Court violate Burdick's due process rights when it awarded temporary custody of three minor children to Brooks at the March 18, 2004 status conference?

II. Did the Circuit Court's modification of temporary custody at the March 18, 2004 status conference constitute an impermissible *ex parte* order or interlocutory injunction?

III. Did the Circuit Court err in modifying Brooks' child support obligation without applying the Maryland Child Support Guidelines?

We answer questions I and III in the affirmative, and therefore, vacate the modification order and remand to the circuit court for a hearing on the merits. We do not reach question II.

## FACTS AND LEGAL PROCEEDINGS

Burdick and Brooks were married in Harford County, Maryland, on July 2, 1993. Three children were born to the marriage: Brittany (age 12), Gabriella (age 11), and Georgeanna (age 10). In addition, in 1994, Brooks legally adopted Brock (age 14), Burdick's son from a former relationship.

On August 14, 2002, Burdick filed a Complaint for Absolute Divorce in the Circuit Court for Harford County, seeking, *inter alia*, sole legal and physical custody of the minor children and child support. The circuit court subsequently referred the parties to the Office of Family Court Services for an evaluation. Thereafter, the parties reached a parenting agreement, under which the children would reside with Burdick, and visit with Brooks every Wednesday night and alternating weekends. The circuit court then entered an order incorporating the terms of the parenting agreement.

On May 6, 2003, the circuit court granted Burdick an absolute divorce from Brooks. The same day, by separate order, the court granted *pendente lite* custody of the minor children to Burdick, and ordered Brooks to pay *pendente lite* child support of $603 bi-weekly.

In August 2003, the circuit court appointed a Guardian Ad Litem (G.A.L.) for the minor children. The parties then attended a Master's hearing, where a variety of issues were addressed, including custody and child support. Following the Master's Recommendations, the circuit court modified child support to $800/month, but left the remainder of the May 6, 2003 order intact.

On October 15, 2003, the circuit court ordered the parties to cooperate in psychological evaluations to be performed by the court-appointed psychologist, Dr. Michael Gombatz. The court order made clear that if the parties failed to attend scheduled appointments, appearance before the circuit court would be required to explain their non-compliance.

Tensions rose over the next few months, with both Burdick and Brooks moving the court to limit the other's access to the minor children. At the request of the G.A.L., the circuit court scheduled a status conference for March 18, 2004. The court notified the parties of the status conference by letter, which stated, in part:

Please be advised that this conference is approximately fifteen (15) minutes long. It is a chance for you to inform the Judge of the issues and he will decide how to proceed. **This is not a hearing or trial, [sic] there will not be time for witnesses to speak.** (Emphasis added.)

All parties and their counsel attended the March 18, 2004 status conference. During the conference, the circuit court read into the record two letters from Dr. Gombatz, one dated March 4, 2004, and the other dated March 17, 2004. Both letters detailed Burdick's continuing non-cooperation in the evaluation process.

Over Burdick's objection, the circuit court awarded temporary custody of the three youngest children to Brooks, with

visitation rights to Burdick.[1]  The court cited Burdick's non-compliance with the psychological evaluation order as the reason for the custody modification.  In addition, the court reduced Brooks's child support obligation from $800/month to $200/month, over Burdick's objection.

## DISCUSSION

### I.

### Denial of Due Process

Burdick argues that she was denied due process of law in violation of Article 24 of the Maryland Declaration of Rights[2] because the circuit court modified custody without adequate notice, a hearing, and any opportunity to rebut the allegations or information relied upon by the court at the March 18, 2004 status conference.

As a parent, Burdick has a constitutionally protected liberty interest in the care and custody of her children.  *See Wagner v. Wagner*, 109 Md.App. 1, 25, 674 A.2d 1, *cert. denied*, 343 Md. 334, 681 A.2d 69 (1996)(citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir.1990)).  "Once it is determined that an interest is entitled to due process protection, the pertinent inquiry then becomes what process is due."  *Pitsenberger v. Pitsenberger*, 287 Md. 20, 30, 410 A.2d 1052, *appeal dismissed*, 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980) (citation omitted).  In describing due process requirements, the Court of Appeals stated in *Pitsenberger*:

---

1. The oldest child, Brock, made clear that he did not want to live with his father, and therefore, the court did not transfer custody of him over to Brooks.

2. Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and therefore, Supreme Court interpretations of the Fourteenth Amendment serve as authority for interpreting Article 24.  *Pitsenberger v. Pitsenberger*, 287 Md. 20, 27, 410 A.2d 1052, *appeal dismissed*, 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980).

Determining what process is due requires consideration and accommodation of both the government and private interests. This essentially involves balancing the various interests at stake ... Fundamentally, due process requires the opportunity to be heard " 'at a meaningful time and in a meaningful manner.' "

*Id.* (citations omitted).

■■ Yet, due process "does not require procedures so comprehensive as to preclude any possibility of error." *Wagner,* 109 Md.App. at 24, 674 A.2d 1 (citing *Int'l Caucus of Labor Comm. v. Md. Dep't of Transport.,* 745 F.Supp. 323, 329–30 (D.Md.1990)). Instead, "due process merely assures *reasonable* procedural protections, appropriate to the fair determination of the particular issues presented in a given case." *Id.* (citations omitted). Therefore, a denial of due process claim is tested by analyzing the totality of the facts in the given case. *Id.* (citing *Betts v. Brady,* 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942)).

We previously addressed due process requirements in the context of custody modification in *Van Schaik v. Van Schaik,* 90 Md.App. 725, 603 A.2d 908 (1992). In *Van Schaik,* the court-appointed counsel for the child requested a hearing " 'with regard to visitation and other issues.' " *Id.* at 730, 603 A.2d 908. The hearing notice sent to the parents provided: "HEARING ON VISITATION AND CHILD'S POSSESSIONS has been scheduled for March 18, 1991 from 9:00 a.m. to 11 a.m." *Id.* Both parents attended the hearing without counsel, and the only attorney present was the child's counsel. *Id.* At the conclusion of the hearing, the trial court terminated the father's joint custody rights, even though no request for a change in custody had been made by either party, or the child's attorney. *Id.* at 730 & n. 4, 603 A.2d 908.

On appeal, the father argued that he was "deprived of being a custodial parent without any notice that a change in custody was sought nor an opportunity to be heard on that issue." *Id.* at 728–29, 603 A.2d 908. We agreed and held that "[t]he lack

of notice constituted a denial of due process and itself consti-
tuted prejudicial error." *Id.* at 739, 603 A.2d 908.

We based our holding, in part, on section 9–205 of the
Family Law Article, which provided that "reasonable notice
and opportunity to be heard shall be given to . . . any parent
whose parental rights have not been previously terminated,
and any person who has physical custody of the child." Md.
Code (1984, 1999 Repl.Vol., 2003 Cum.Supp.), § 9–205 of the
Family Law Article ("FL").[3] After citing FL section 9–205,
the *Van Schaik* Court stated that "[i]t is clear that if a court is
contemplating holding a hearing at which it will, or may,
determine custody issues, a parent with custodial rights . . .
**must be notified that such an issue may be the subject of
the hearing."** *Van Schaik,* 90 Md.App. at 738, 603 A.2d 908
(emphasis added).

■ We further explained that neither parent had request-
ed a change in custody, nor were they aware that custody was
even at issue until the court made its ruling at the end of the
hearing. *Id.* at 739, 603 A.2d 908. " '[U]nless . . . a party
otherwise receives adequate notice of an issue during the
course of a proceeding, due process is denied.' " *Id.* (quoting
*Blue Cross of Maryland, Inc. v. Franklin Square Hosp.,* 277
Md. 93, 101, 352 A.2d 798 (1976)). The *Van Schaik* Court
concluded that the father had no opportunity for effective
argument regarding custody, because there was no notice that
custody would be considered, nor any discussion about custody
during the hearing itself until the end. *Id.*

■ The holding in *Van Schaik* supports Burdick's conten-
tion that the circuit court denied her due process of law at the
March 18, 2004 status conference. The notice letter sent to
Burdick stated that the conference was to last 15 minutes and
affirmatively declared that the conference was **not** a hearing
or a trial, nor would witnesses have time to speak. Much like

---

3. Repealed and recodified without substantial change at Md.Code
(1984, 1999 Repl.Vol., 2004 Cum.Supp.), § 9.5–205 of the Family Law
Article.

the notice sent in *Van Schaik*, the notice letter sent to Burdick failed to inform her that the court could make a custody determination at the conference.

In *Van Schaik*, we relied on the Court of Appeals' decision in *Phillips v. Venker*, 316 Md. 212, 557 A.2d 1338 (1989), which stated:

> [I]t is axiomatic that [the parties] were entitled to adequate notice of the time, place, and nature of that hearing, **so that they could adequately prepare.**

> Counsel for the plaintiffs was not given any meaningful opportunity to review his file, collect his thoughts, or otherwise prepare for oral argument.

*Id.* at 222, 557 A.2d 1338 (emphasis added). Because the court did not provide notice of a possible custody determination, Burdick had no "opportunity for an **effective argument** on the issue of custody." *See Van Schaik*, 90 Md.App. at 739, 603 A.2d 908 (emphasis added). Compounding the lack of notice is the fact that Burdick's counsel entered his appearance the same day as the status conference. He was, therefore, most likely not entirely familiar with the case's contentious history, much less prepared to argue the custody issue. "That he was able to participate in some fashion in the argument the trial judge insisted be held does not suggest that he was able to participate effectively." *Phillips*, 316 Md. at 222, 557 A.2d 1338.

Moreover, the circuit court's proclaimed reason for modifying custody was Burdick's alleged non-compliance with the psychological evaluation order, and realistically, the court's action can be described at best as punitive. During the status conference the circuit court commented:

> [M]y inclination is to grant Mr. Brooks temporary custody of these three kids, and I will review it when I get Dr. Gombatz's report. . . .

> This case has the reputation of being one of the worst cases this courthouse has every [sic] faced, and I don't think for a moment that anything is going to change because I say, I'm

really serious; I want change, and I think the only way it's going to change is because I do something drastic. . . .

My change of custody is going to be because [Burdick] has not complied with the order to get a neutral evaluation and that, if I had that information, I'd be in a much better position to start making calls about these two people. . . .

Now, quite frankly, my diagnostic criteria is when I've got a file this thick, I've got two mentally ill people. . . . The only way you deal with personality disorders is you give clear warning, and my court order was clear. And when you have to act, you act.

Now how quickly we address whether or not the kids go back to Mom depends on how quickly we get this evaluation done.

■ The trial court's reasoning and order "evidences a fundamental misunderstanding of the court's role in a child custody dispute. The court's objective is not . . . to punish the less capable parent; rather, the court seeks to effectuate that arrangement which will promote 'the best interest of the child.' " *Hughes v. Hughes,* 80 Md.App. 216, 231, 560 A.2d 1145 (1989) (citations omitted).

On remand, the circuit court's goal should be to determine what custody arrangement is in the best interest of the minor children, and not to punish a disobedient parent. *See Kovacs v. Kovacs,* 98 Md.App. 289, 312, 633 A.2d 425 (1993), *cert. denied,* 334 Md. 211, 638 A.2d 753 (1994)("The proper standard the court should use to determine a change of custody from a *pendente lite* order is and continues to be what is in the best interest of the child.") (citations omitted).

Furthermore, we reject Brooks' claim that the parties had agreed to the circuit court rendering temporary orders at scheduled conferences. Brooks does not identify where in the record this alleged agreement appears and we have found nothing in the record to support this assertion.

## II.

### Modification Of Child Support

Burdick next contends that the circuit court erred in modifying Brooks' child support obligation without applying the Maryland Child Support Guidelines. We agree.

Family Law Article section 12–202 states, in pertinent part:

(a)(1) Subject to the provisions of paragraph (2) of this subsection, in any proceeding to establish or modify child support, whether pendente lite or permanent, the court **shall** use the child support guidelines set forth in this subtitle.

(2)(i) There is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines set forth in this subtitle is the correct amount of child support to be awarded. . . .

(iv) 1. If the court determines that the application of the guidelines would be unjust or inappropriate in a particular case, the court shall make a written finding or specific finding on the record stating the reasons for departing from the guidelines.

2. The court's finding shall state:

A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines; . . . (Emphasis added.)

Application of the Maryland Child Support Guidelines is mandatory when the parents have a monthly combined adjusted income of $10,000 or less. *Smith v. Freeman,* 149 Md.App. 1, 19, 814 A.2d 65 (2002) (citations omitted). In this case, the parties' monthly combined adjusted income fell below $10,000. The circuit court failed to apply the Guidelines, however, when it decreased Brooks' child support obligation from $800/month to $200/month.

Instead, the court impermissibly allocated the original child support obligation evenly among the four cov-

ered children,[4] and suspended 75% of Brooks's child support obligation because custody of three children was transferred. "[A] single amount to be paid periodically for the support of more than one child [is] not subject to an automatic pro rata reduction...." *Tidler v. Tidler,* 50 Md.App. 1, 11, 435 A.2d 489 (1981) (citations omitted)(pre-Guidelines case finding error in chancellor's automatic reduction by one-fourth of the child support obligation when one of the four covered children reached majority); *see also Kovacs v. Kovacs,* 98 Md.App. 289, 313, 633 A.2d 425 (1993), *cert. denied,* 334 Md. 211, 638 A.2d 753 (1994)("Section 12–202 of [the Family Law Article] specifically requires a court to use the guidelines in any proceeding to establish or modify child support, whether *pendente lite* or permanent").

Even if the circuit court had decided to depart from the guidelines when it modified the child support obligation, it failed to follow the necessary procedures outlined in FL section 12–202(a)(2)(iv), which require a court to make a specific finding stating the reasons for departing. On remand, Brooks' child support obligation should be determined by applying the Guidelines.

## III.

### Motion To Supplement The Record

Brooks' Motion to Supplement the Record and/or Motion to Dismiss the Appeal is denied.

**ORDER MODIFYING TEMPORARY CUSTODY AND CHILD SUPPORT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

4. This resulted in an apportionment of $200/month per child.