890 A.2d 295

**In re KATHERINE C.**

**No. 32, Sept. Term, 2005.**

Court of Appeals of Maryland.

Jan. 17, 2006.

Julia Doyle Bernhardt, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, for Appellant.

■■■■■■■■■

Barbara T. Strong, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for Appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, Judge.

■ This case [1] arises from the use of the Maryland Child Support Guidelines [2] (the "Guidelines") by the Circuit Court for Montgomery County, while sitting as a juvenile court in a permanency plan review hearing [3] for Katherine C. The court initially established a child support obligation at the July 22, 2004, hearing in response to the father, Robert C.'s, Motion to

---

1. Md.Code (1973, 2002 Repl.Vol., 2004 Supp.), § 3–823(h) of the Courts and Judicial Proceedings Article requires that a subsequent hearing be held every six months. *See* note 3. One was scheduled for September 7, 2005. On our motion we have obtained copies of the Circuit Court for Montgomery County's docket entries relating to that hearing and the order resulting from the hearing. There appears to have been no modification of the trial courts' previous order relating to child support.

2. The Maryland Child Support Guidelines are codified in Md.Code (1984, 1999 Repl.Vol., 2004 Supp.), §§ 12–101 *et seq.* of the Family Law Article.

3. Md.Code (1973, 2002 Repl.Vol., 2004 Supp.), § 3–823 of the Courts and Judicial Proceedings Article states in pertinent part:
    "(b) *Permanency planning hearing.*—(1) The court shall hold a permanency planning hearing to determine the permanency plan for a child:
        (i) No later than 11 months after a child committed under § 3–819 of this subtitle or continued in a voluntary placement under § 3–819.1(b) of this subtitle enters an out-of-home placement; or
        (ii) Within 30 days after the court finds that reasonable efforts to reunify a child with child's parent or guardian are not required based on a finding that a circumstance enumerated in § 3–812 of this subtitle has occurred.
        . . .
    (e) *Determinations to be made at hearing.*—At a permanency planning hearing, the court shall:
        (1) Determine the child's permanency plan, which may be:
        (i) Reunification with the parent or guardian;
        (ii) Placement with a relative for:

Determine (and Allocate) Child Support. The resulting order relieved Victoria C. (hereinafter appellant), of any child support obligation. On March 21, 2005, the Circuit Court held a permanency plan review hearing at which, without prior notice to the parties that the hearing would concern issues of support, it re-evaluated the child support situation of Katherine C., applied the child support guidelines under Md.Code (1984, 1999 Repl.Vol., 2004 Supp.), § 12–204 of the Family Law Article, and entered an order[4] providing that appellant, the child's mother, "shall pay $282 per month in child support . . . to begin on May 1, 2005. . . ." On March 24, 2005, appellant

---

    1. Adoption; or
    2. Custody and guardianship;
    (iii) Adoption by a nonrelative;
    (iv) Guardianship by a nonrelative;
    (v) Continuation in a specified placement on a permanent basis because of the child's special needs or circumstances;
    (vi) Continuation in placement for a specified period because of the child's special needs or circumstances; or
    (vii) Independent living; and
    (2) For a child who has attained the age of 16, determine the services needed to assist the child to make the transition from placement to independent living.

       . . .

    (h) *Periodic reviews.*—(1)(i) Except as provided in subparagraphs (ii) and (iii) of this paragraph, the court shall conduct a hearing to review the permanency plan at least every 6 months until commitment is rescinded or a voluntary placement is terminated."

**4.** The child support order was entered as a *pendente lite* order. While *pendente lite* orders are not final judgments under Md.Code (1973, 2002 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings article, "appellate court jurisdiction is appropriate for the interlocutory appeal of an order for the payment of money." *Cannon v. Cannon,* 384 Md. 537, 544 n. 1, 865 A.2d 563, 567 n. 1 (2005). As this Court stated in *Frey v. Frey,* 298 Md. 552, 471 A.2d 705 (1984):

    "Generally, with certain narrow exceptions, under section 12–301 of the Maryland Code appeals must be from final judgments. *King v. State Roads Commission,* 294 Md. [236,] 240, 449 A.2d [390,] 393 [(1982)]. Absent an exception, an action of the circuit court is not appealable unless a final judgment has been entered. The policy underlying this rule is that piecemeal appeals are disfavored. *Cant v. Bartlett,* 292 Md. 611, 614, 440 A.2d 388, 389 (1982). The principal exception to the final judgment rule is section 12–303, which allows appeals from certain interlocutory orders entered by a circuit court in a civil case. Maryland Code (1974, 1980 Repl.Vol.), Cts. & Jud.Proc.

filed a Motion for Reconsideration of the order to pay child support stating that she was a destitute parent as defined in Md.Code (1984, 1999 Repl.Vol.), § 13–101(c) of the Family Law Article.[5] On April 13, 2005, the Circuit Court entered an order denying appellant's Motion for Reconsideration. On July 7, 2005, appellant noted an appeal to the Court of Special Appeals. This Court, on its own initiative and prior to any proceedings in the intermediate appellate court, granted certiorari. *In re Katherine C.*, 388 Md. 97, 879 A.2d 42 (2005). Appellant submits three questions:

1. "May a juvenile court exercising jurisdiction in a CINA[6] case use the Maryland Child–Support Guidelines to calculate the child-support amount, where the child is in the custody of a government agency?"

---

Article, § 12–303. Section 12–303(c)(5) allows, *inter alia*, an appeal from an order for the payment of money."

*Frey*, 298 Md. at 555–56, 471 A.2d at 707 (some citations omitted). Md.Code (1973, 2002 Repl.Vol.), § 12–303(3)(v) of the Courts and Judicial Proceedings Article provides that a party may appeal from an interlocutory order for the payment of money. This is applicable to child support orders, as this Court clarified in *Simmons v. Perkins*, 302 Md. 232, 486 A.2d 1192 (1985): " 'The types of orders previously held by this Court to be orders for the "payment of money" are orders for alimony, *child support*, and related counsel fees, *Chappell v. Chappell*, 86 Md. 532, 39 A. 984 (1898), and *Pappas v. Pappas*, 287 Md. 455, 413 A.2d 549 (1980).' " *Simmons*, 302 Md. at 235, 486 A.2d 1192 (quoting *Anthony Plumbing of Maryland Inc. v. Attorney General*, 298 Md. 11, 20, 467 A.2d 504, 508–09 (1983)) (emphasis added); *see also Knott v. Knott*, 146 Md.App. 232, 245–46, 806 A.2d 768, 776–77 (2002).

5. Md.Code (1984, 1999 Repl.Vol.), § 13–101(c) states in pertinent part:

"**§ 13–101. Definitions.**

. . .

(c) *Destitute parent.*—'Destitute parent' means a parent who:

(1) has no means of subsistence; and

(2) cannot be self-supporting, due to old age or mental or physical infirmity."

6. As defined in Md.Code (1973, 2002 Repl.Vol., 2004 Supp.), § 3–801 of the Courts and Judicial Proceedings Article:

"(f) *Child in need of assistance.*—'Child in need of assistance' means a child who requires court intervention because:

(1) The child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and

2. "May a juvenile court exercising continuing jurisdiction in a CINA case at a permanency-plan-review hearing enter an order establishing or modifying a parent's obligation to pay child support, and may it do so in the absence of a pleading filed by any party requesting the entry or modification of a child-support order, and *without affording adequate notice to the parent?*" [Emphasis added.]

3. "If so, did the juvenile court err or abuse its discretion in ordering the mother to pay child support to a government agency, where the mother met the statutory definition of an adult destitute child or parent, in that she is mentally retarded, was unemployed, her monthly expenses exceeded her monthly income, and where the child was in the custody of a government agency as the result of sexual abuse by the father, who is serving a sentence of imprisonment as a result of that abuse?"

We decline to answer question three as it does not plainly appear in the record to have been raised in or decided by the trial court.[7] Md. Rule 8–131(a). We find that a juvenile court exercising jurisdiction in a CINA case may use the Guidelines to calculate the child support amount, where the child is in the custody of a government agency but, in such a circumstance, the actual total support awarded may not exceed the actual costs expended by the governmental agency. As to question two, however, we hold that adequate notice of the child

---

(2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs.

(g) *CINA.*—'CINA' means a child in need of assistance."

7. After conducting an exhaustive review of the record, there is no indication in the transcripts that at the March 21, 2005 hearing, appellant objected to paying child support to a government agency. In actuality, as the facts indicate *infra,* appellant filed a Motion For Establishment of Child Support utilizing the Guidelines and with the knowledge that any support would go to a government agency. Additionally, given our ultimate decision, it is not necessary to address the issue of whether the appellant meets the definition of "destitute" parent.

support hearing was not provided to the appellant, and therefore, we vacate the decision of the Circuit Court for Montgomery County requiring appellant to pay child support.

## I. Facts

Appellant and her ex-husband, Robert C. (hereinafter referred to as the husband or father), are the biological parents of Katherine C., born March 6, 1988. On October 3, 2003, at the age of fifteen, Katherine was removed from the care of her parents after the Montgomery County Department of Health and Human Services ("MCDHHS") filed a petition in the Circuit Court for Montgomery County alleging that Katherine was a Child in Need of Assistance (CINA).[8] On November 3, 2003, the Circuit Court found Katherine to be a CINA after it was established that her father began having sexual relations with her on an ongoing basis when she was eight years old, and that her mother, appellant, had failed to protect the child. As a result of this finding, Katherine was placed in the John L. Gildner Regional Institute for Children and Adolescents (RICA), a residential treatment program for children and adolescents with severe emotional disabilities.

On June 21, 2004, the father filed a Motion to Determine (and Allocate) Child Support.[9] The motion suggested that $10,500.00 he had paid into his attorney's trust account be used to support Katherine at the rate of $700.00 a month for the 15 months running retroactively from October 1, 2003, when Katherine went into care, through December 31, 2004. On July 21, 2004, appellant filed her own Motion for Establishment of Child Support.[10] Both motions calculated support using the Guidelines.

---

**8.** The petition requested shelter care, alleging that the father had sexually abused Katherine.

**9.** An Opposition to the Motion to Determine and Allocate Child Support was filed by the MCDHHS on July 7, 2004. It was withdrawn at the July 22, 2004, hearing.

**10.** Appellant's motion provided the court with a Maryland Child Support Guidelines Worksheet indicating that her child support obligation

On July 22, 2004, the Circuit Court conducted a CINA review hearing and a hearing to determine the amount of child support payable by Katherine's parents. On August 5, 2004, the Circuit Court entered a *pendente lite* order directing that the $10,500.00, minus $150.00 which had already been expended on behalf of Katherine, paid by the father to his attorney's trust account, be used to satisfy his obligation of $700.00 per month in child support. Of the $700.00 per month, $500.00 was payable to MCDHHS as reimbursement for the cost of Katherine's care and $200.00, to be administered by MCDHHS, would be utilized for Katherine's future expenses. The total amount of $10,350.00 satisfied the father's child support obli-

---

should be $95.00 per month. Accordingly, there may be preservation or waiver issues extant in this case. We took this case, however, primarily to address the important issue of the appropriate use of the Guidelines in CINA review hearings. Because this issue is likely to arise again on remand in the present case, and in other cases as well, we shall address the issue.

Maryland Rule 8–131 provides:

"(a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, *but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.*" (Emphasis added.)

The primary purpose of Rule 8–131(a) "is 'to ensure fairness for all parties in a case and to promote the orderly administration of law.' " *State v. Bell,* 334 Md. 178, 189, 638 A.2d 107, 113 (1994) (quoting *Brice v. State,* 254 Md. 655, 661, 255 A.2d 28, 31 (1969) (quoting *Banks v. State,* 203 Md. 488, 495, 102 A.2d 267, 271 (1954))); *Basoff v. State,* 208 Md. 643, 650, 119 A.2d 917, 921 (1956). As the Court stated in *Banks,* "[s]o, when a party has the option either to object or not to object, as he sees fit, his failure to exercise the option while it is still within the power of the trial court to correct the error, constitutes a waiver of error estopping him from bringing it to the attention of the Court of Appeals." 203 Md. at 495, 102 A.2d at 271. While the Court may decide to review an unpreserved issue, we will only do so "if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." Md. Rule 8–131(a); *see Jones v. State,* 379 Md. 704, 712, 843 A.2d 778, 783 (2004) ("The word 'ordinarily' in Rule 8–131(a) anticipates that an appellate court will, on appropriate occasion, review unpreserved issues."). We deem it desirable to address the issue of the use of the Guidelines in CINA cases.

gation retroactive from October 1, 2003 through December 31, 2004. It was further ordered at that hearing that appellant would not be obligated to pay child support because of her marginal income. Finally, the order stated "that the matter of the parents' respective child support obligations on behalf of [Katherine C.] shall be subject to further review by th[e] [Circuit] Court after December 31, 2004."

On March 21, 2005, the Circuit Court held a regular permanency plan review hearing and, without prior notice to appellant that it was going to do so, revisited the child support issue. At the time, the father was incarcerated for charges relating to the child abuse of Katherine and therefore, unable to pay child support.[11] The court inquired at the review hearing as to whether appellant was in a position to pay child support at the time.

Counsel for appellant stated that "my client is operating with an IQ of about 62, and she needs a lot of help, . . ." but "she wants her daughter to have as much support as she can to get all of the money that she possibly can . . ." and that "[a]s soon as her record is expunged, she is going to be able to go back to work at the daycare."[12] Counsel stated that: "She does have a driver's license. She is actually amazingly high-functioning given her intellectual abilities." The court asked whether appellant had a job and counsel replied: "Yes, she says, in two weeks. That is what she has told me." Counsel continued, stating that "[appellant] would like to give every penny she has to her daughter, Your Honor." The colloquy continued:

---

11. In November, 2003, the father was charged with rape, child abuse, and child pornography. In December, 2004, he pled guilty to the criminal charges and was sentenced to 16 years in prison, with eight years suspended.

12. On February 5, 2004, appellant was arrested on charges of child endangerment and witness tampering after it was alleged that she attempted to get Katherine to recant her story. The charges were eventually dropped.

"[APPELLANT'S COUNSEL]:—and this is the issue that we had when we were in here with Judge Savage and my client had a divorce attorney who represented her and did the child support. And he explained to Judge Savage that my client's desire is to give every penny she has to her daughter, but Judge Savage recognized, because of my client's limitations, that she is going to have some trouble supporting herself and that she shouldn't be ordered to pay child support.

THE COURT: Well, the fact that she is wanting to give every penny is nice, but it really doesn't get to the heart of the issue. The heart of the issue is, is there an ability to pay support."

Appellant testified that she would be starting back at work in a few weeks. She stated that she would be making $9.25 an hour and working forty hours a week, netting $400.00 every two weeks. She also testified that she owned a car and would drive herself to and from work. The court determined that, based upon these facts, appellant should pay child support. Applying the Guidelines, the court found that with an income of $19,240.00 a year, or $9.25 an hour, taking into account a $200.00 per month credit for health insurance payments, the guidelines provided for child support payments of $282.00 a month.[13]

Counsel for appellant objected, stating that "because of her cognitive limitations, I don't think it is fair to base any order on her representations.... *She doesn't have her child support*

---

13. In determining the sum to be $282.00 per month, the court apparently forgot to deduct the $200.00 per month credit for health insurance payments from the alleged income of $19,240.00 per annum. An income of $19,240.00 per year is equal to $1,603.33 per month. Applying $1,603.33 (it appears that the court used $1,600.00, rather than extrapolating to $1,650.00) to the Guidelines, we arrive at a monthly child support obligation for one child of $282.00. *See* § 12–204(e). If the $200.00 per month credit for health insurance payments had been applied, appellant's alleged monthly income would be applied to the Guidelines as $1,403.33, which, extrapolated to $1,450.00 as required by § 12–204(c), results in a monthly child support obligation for one child of $260.00. *See* § 12–204(e).

*attorney here, and we weren't scheduled to be here to determine whether she has a child support obligation."* [Emphasis added]. In consideration of the objection, the court made the order *pendente lite*, stating, however, "[b]ut, if I felt that she didn't have the ability to pay and I felt she didn't understand, she has done very well, she has answered every question perfectly. . . ." The court then, over continuing objection, set the order for $282.00 in child support per month to begin on May 1, 2005.

On March 24, 2005, appellant filed a Motion for Reconsideration of the order to pay child support. She alleged that she is a disabled or destitute parent as defined by Md.Code (1984, 1999 Repl.Vol., 2004 Supp.), § 13–101(c) of the Family Law Article. The motion also alleged that appellant was unemployed and that her testimony at the March 21, 2005, hearing concerning her job prospects was not credible. In addition, the motion alleged that a child support obligation of $282.00 per month was not in accordance with § 12–201(d) of the Family Law Article, that it was unjust, would pose a substantial hardship upon appellant, and was not in the best interests of Katherine, the minor child. On April 13, 2005, the Circuit Court denied appellant's Motion for Reconsideration.

## II. Discussion

### A. Maryland Child Support Guidelines

This Court first addressed the Guidelines in *Voishan v. Palma,* 327 Md. 318, 609 A.2d 319 (1992). There, the Court explained why the Legislature enacted the Guidelines set forth in Md.Code (1984, 1999 Repl.Vol., 2004 Supp.), §§ 12–101 *et seq.* of the Family Law Article:

"The General Assembly enacted these guidelines in 1989 to comply with federal law and regulations. *See* 42 U.S.C. §§ 651–667 (1982 & 1984 Supp. II) and 45 C.F.R. § 302.56 (1989). The federal mandate required that the guidelines be established and 'based on specific descriptive and numeric criteria and result in a computation of the support obligation.' *Id.* When drafting the guidelines, the Maryland Senate Judicial Proceedings Committee had before it *Devel-*

*opment of Guidelines For Child Support Orders: Advisory Panel Recommendations and Final Report,* U.S. Department of Health and Human Services' Office of Child Support Enforcement. This report explained that the need for the guidelines was threefold: (1) to 'remedy a shortfall in the level of awards' that do not reflect the actual costs of raising children, (2) to 'improve the consistency, and therefore the equity, of child support awards,' and (3) to 'improve the efficiency of court processes for adjudicating child support. . . .' "

*Voishan,* 327 Md. at 322, 609 A.2d at 321.

Section 12–101(a) of the Family Law Article provides Maryland courts with the authority to award child support to a custodial parent or child support agency. *See Wills v. Jones,* 340 Md. 480, 484, 667 A.2d 331, 333 (1995). Section 12–104(a) states that "[t]he court may modify a child support award subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance." Use of the Guidelines is mandatory in most instances, as § 12–202(a) provides that "in any proceeding to establish or modify child support, whether pendente lite or permanent, the court *shall* use the child support guidelines set forth in this subtitle." (Emphasis added). Section 12–202(a)(2)(i) further provides that "[t]here is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines . . . is the correct amount of child support to be awarded." "The presumption may be rebutted by evidence that the application of the guidelines would be unjust or inappropriate in a particular case." § 12–202(a)(2)(ii). Courts may consider a number of factors in determining whether the application of the Guidelines would be unjust or inappropriate in a particular case:

"1. the terms of any existing separation or property settlement agreement or court order, including any provisions for payment of mortgages or marital debts, payment of college education expenses, the terms of any use and possession order or right to occupy to the family home under an agreement, any direct payments made for the

benefit of the children required by agreement or order, or any other financial considerations set out in an existing separation or property settlement agreement or court order; and

2. the presence in the household of either parent of other children to whom that parent owes a duty of support and the expenses for whom that parent is directly contributing."

§ 12–202(a)(2)(iii).

If the court finds that the application of the Guidelines would be unjust or inappropriate in a particular case, the court must make a "written finding or specific finding on the record stating the reasons for departing from the guidelines" and the finding must state:

"A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines;

C. how the finding *serves the best interests of the child;* and

D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, the estimated value of the items conveyed."

§ 12–202(a)(2)(v)(2) (emphasis added).

### Use of the Guidelines to determine child support when the child is in the custody of a government agency.

■ Appellant argues that a juvenile court exercising jurisdiction in a CINA case may not use the Guidelines to calculate child support, where the child is in the custody of a government agency rather than in the custody of one of the parents. We find appellant's argument to be unpersuasive and hold that courts in CINA proceedings may apply the Guidelines as codified in §§ 12–101 *et seq.* of the Family Law Article even when the child support monies will go towards the reimbursement of State care.

Md.Code (1973, 2002 Repl.Vol., 2004 Supp.), § 3–819(*l*) of the Courts and Judicial Proceedings Article expressly provides

authorization for courts to order a parent to reimburse the State for the costs of a CINA child's commitment: [14]

> "After giving the parent a reasonable opportunity to be heard, and determining the income of the parent, the court may order either parent or both parents to pay a sum in the amount the court directs to cover wholly or partly the support of the child under this subtitle."

This provision applies in CINA and non-CINA cases.[15] *See* 2001 Md. Laws, ch. 415.

One of the main purposes of the Guidelines is to " 'improve the consistency, and therefore the equity, of child support awards.' " *Voishan,* 327 Md. at 322, 609 A.2d at 321. Applying the Guidelines "across the board," regardless of whether a child is in the care of one of their parents or the State helps to ensure this consistency. A parent that meets the Guidelines should not benefit by being released of their obligation to pay child support just because it is determined that their child is a CINA and removed from parental custody.

The Court of Special Appeals addressed the situation of child support being paid to the State in *In re Joshua W.,* 94 Md.App. 486, 617 A.2d 1154 (1993). *In re Joshua W.* concerned a number of children that, like Katherine in the case *sub judice,* were adjudicated CINA and placed under the

---

**14.** A similar provision is found in § 3–8A–29 and applies to juvenile proceedings. It states:

> "After giving the parent a reasonable opportunity to be heard, the court may order either parent or both parents to pay a sum in the amount the court directs to cover wholly or partly the support of the child under this subtitle."

**15.** Maryland's Social Services Administration's regulations, in COMAR 07.02.11.26, provide that "[a]ll of the child's resources, *including parental support* ... are considered ... in determining the amount available for reimbursement of the cost of care" and that "[t]he local department *shall:* (1) Initiate child support for every child in out-of-home placement; and (2) Pursue support enforcement activity for both absent parents...." (Emphasis added).

The statute limits the ability of the agency to collect more than its expenditures. Its ability to recover its costs are "capped" at its actual costs by the limitation that the support ordered is to cover "wholly or partly the support of the child...."

protective custody of the State. *Id.* at 488–89, 617 A.2d at 1155. The Circuit Court for Anne Arundel County held a hearing to determine if the mother and father of the children (at that time divorced) should pay support for the children. *Id.* at 489, 617 A.2d at 1155–56. The court determined and ordered that the father should pay $300 per week in child support on behalf of the children to the Anne Arundel County Department of Social Services ("DSS"). *Id.* at 489, 617 A.2d at 1156. The focus of the appeal was "whether the circuit court erred in ordering [the father] to reimburse DSS for the support of [the children]." *Id.* at 490, 617 A.2d at 1155.

Judge Motz, writing for the Court of Special Appeals, first set out to determine whether the trial court was obliged to use the Guidelines as set forth in Md.Code (1984, 1999 Repl.Vol., 2004 Supp.), §§ 12–101 *et seq.* of the Family Law Article. *In re Joshua W.*, 94 Md.App. at 494, 617 A.2d at 1158. The court looked at the predecessor statute to § 3–8A–29, Md.Code (1973, 1989 Repl.Vol.), § 3–830 of the Courts and Judicial Proceedings Article. Section 3–830 states that, "[a]fter giving the parent a reasonable opportunity to be heard, the court may order either parent or both parents to pay a sum in the amount the court directs to cover the support of the child in whole or in part." [16] The court found that nothing in the language of § 3–830 or in its legislative history placed a limit on the amount the court could direct a parent to pay based on the Guidelines. *In re Joshua W.*, 94 Md.App. at 495, 617 A.2d at 1158. Rather, the court looked to the Guidelines themselves to determine their applicability: "The guideline legislation does specifically provide, in pertinent part, that 'in *any proceeding to establish or modify child support*, whether pendente lite or permanent, the court *shall* use the child support guidelines set forth in this subtitle.'" *Id.* (quoting § 12–202(a) of the Family Law Article).

The Court of Special Appeals, however, recognized that the facts in *In re Joshua W.*, as with the case *sub judice*, are not

---

**16.** This language is almost identical to that of §§ 3–8A–29 and 3–819(*l*) as discussed *supra,* and thus applicable to the case *sub judice*.

like most actions for child support. *In re Joshua W.*, 94 Md.App. at 495, 617 A.2d at 1158. In most cases of child support actions one custodial parent is seeking child support from the non-custodial parent. In contrast, both *In re Joshua W.* and the case *sub judice* involve two non-custodial parents and a third party, the State. In both cases the circuit courts ordered a parent to pay child support to the State for reimbursement of custodial care. *Id.*

The court in *In re Joshua W.* examined the development of the Guidelines and found that the language of the Guidelines emphasized custodial and non-custodial parents, failing to directly address the factual situation at hand. *In re Joshua W.*, 94 Md.App. at 496–97, 617 A.2d at 1159. The court, however, elucidated that:

"Despite this emphasis on custodial and noncustodial parents and sole and shared physical custody in the guidelines, there is nothing in the statute or its legislative history to suggest that the General Assembly intended that the child support guidelines *only* be applied to the usual child support cases.... Rather, as noted above, Fam. Law. § 12–202(a) expressly provides that the guidelines 'shall' be used 'in *any* proceeding to establish child support.' "

*In re Joshua W.*, 94 Md.App. at 497–98, 617 A.2d at 1159–60. The Court of Special Appeals found further support for the conclusion that the Guidelines are to be, or may be, used in all child support cases, by referencing the federal legislation [17] that spurred the creation of Maryland's Guidelines as well as Maryland's foster care regulations.[18] *In re Joshua W.*, 94 Md.App. at 498, 617 A.2d at 1160.

---

**17.** The federal government passed the Child Support Enforcement Amendments of 1984 in a substantial effort to reform state child support enforcement programs. *See* 42 U.S.C. §§ 651–669 (1991); 45 C.F.R. § 302.56 (1991); *see also* State of Maryland, Senate Judicial Proceedings Committee Bill Analysis for Senate Bill 49, 1989 Session (1989). As indicated *supra,* the Guidelines were established in order for Maryland to comply with the federal regulations.

**18.** *See* COMAR 07.02.11.26 as discussed *supra.*

Ultimately, based on the above factors, the court in *In re Joshua W.* concluded that "the General Assembly intended that these child support guidelines be used in all child support cases, including those, like the one at hand, involving government financed child care and no custodial parent." *In re Joshua W.*, 94 Md.App. at 500, 617 A.2d at 1161.

That finding is consistent with the State of Maryland's policies regarding child support and children generally. A parent has both a common law and statutory duty to support his or her minor children. *See* Md.Code (1984, 2004 Repl. Vol.), § 5–203(b) [19] of the Family Law Article; *Drummond v. Drummond,* 350 Md. 502, 520, 714 A.2d 163, 172 (1998); *Garay v. Overholtzer,* 332 Md. 339, 368–69, 631 A.2d 429, 432 (1993); *Middleton v. Middleton,* 329 Md. 627, 632–33, 620 A.2d 1363, 1365 (1993); *Carroll County Dept. of Social Servs. v. Edelmann,* 320 Md. 150, 170–71, 577 A.2d 14, 23 (1990). As the Court discussed in *Drummond:*

> "We previously have noted the rationale underlying a parent's obligation of support:
>
> > '[T]he duty of parents to provide for the maintenance of their children, is a principle of natural law; an obligation laid on them not only by nature herself, but by their own proper act, in bringing them into the world: ... By begetting them therefore they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved.'
>
> *Knill v. Knill,* 306 Md. 527, 531–32, 510 A.2d 546, 548 (1986) (quoting 1 W. Blackstone, *Commentaries* * 447). *See also Warren v. Warren,* 336 Md. 618, 629, 650 A.2d 252, 257 (1994) (quoting *Knill* ). To relieve a parent entirely of his

---

**19.** Section 5–203(b) provides:

"(b) *Powers and duties of parents.*—The parents of a minor child, as defined in Article 1, § 24 of the Code:

(1) are jointly and severally responsible for the child's *support,* care, nurture, welfare, and education; and

(2) have the same powers and duties in relation to the child." (Emphasis added.)

or her support obligation because the child receives a benefit to which he or she is entitled from some other source would not ordinarily be consistent with this fundamental principle of family law."

*Drummond,* 350 Md. at 520, 714 A.2d at 172.

It is evident that parents have an obligation to support their children.  In a case such as the one *sub judice,* that obligation does not disappear when a child is adjudicated CINA and removed from parental custody and care.  The parents of the child, jointly and severally, have a responsibility and obligation to provide child support if they are capable of doing so. § 5–203(b).  The proper method for a court to use in determining the amount of child support normally is the application of the Guidelines.  As § 12–202(a) provides, "in any proceeding to establish or modify child support, whether pendente lite or permanent, the court *shall* use the child support guidelines set forth in this subtitle."  (Emphasis added).  Therefore, a juvenile court exercising jurisdiction in a CINA case *may* (or under some circumstances should) use the Guidelines to calculate child support even where the child is in the custody of a government agency, but, in such cases, the amount of the total payment from the parents to the governmental agency cannot exceed the actual costs to the agency,[20] even if the guideline calculations might require a greater sum had the child been in the custody of a non-governmental entity.

## B.  Notice

Appellant argues further, that if a child support order may be entered at a permanency plan review hearing, it may only be entered subject to a pleading being filed by one of the parties requesting the entry of a child support order and *adequate notice being provided to the parties.*  We find that adequate notice appropriate to the nature of the case was not provided to appellant that the matter of child support would

---

**20.** This would require the governmental entity to present sufficient evidence to allow a court to make a determination as to the agency's actual costs.

be addressed at the March 21, 2005, hearing. Thus, we direct our attention to the due process concerns of appellant relating to lack of notice.

In a case such as the one *sub judice,* the trial court must provide reasonable notice to the parties concerning *when* the matter of child support will be addressed. This Court has stated previously that:

> "Generally, due process requires that a party to a proceeding is entitled to both notice and an opportunity to be heard on the issues to be decided in a case. *Standard Oil Co. v. Missouri,* 224 U.S. 270, 281, 32 S.Ct. 406, 56 L.Ed. 760 (1912); *Armstrong Cork Co. v. Lyons,* 366 F.2d 206 (8th Cir.1966); *see also Ottenheimer Pub. v. Employ. Sec. Adm.,* 275 Md. 514, 520, 340 A.2d 701 (1975); *Accrocco v. Splawn,* 264 Md. 527, 534, 287 A.2d 275 (1972); *Travelers v. Nationwide,* 244 Md. 401, 409, 224 A.2d 285 (1966); *Balto. County v. White,* 235 Md. 212, 220, 201 A.2d 358 (1964)."

*Blue Cross of Maryland, Inc. v. Franklin Square Hospital,* 277 Md. 93, 101, 352 A.2d 798, 804 (1976); *In re Adoption No. 9979,* 323 Md. 39, 57, 591 A.2d 468, 477 (1991).[21]

An important Supreme Court case discussing reasonable notice is *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).[22] The facts of

---

**21.** Article 24 of the Declaration of Rights of the Maryland Constitution provides that "no man ought to be ... deprived of his life, liberty or property, but ... by the Law of the land." Md. Const. art. 24. The Fourteenth Amendment of the United States Constitution provides that: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. The phrase "law of the land" in Article 24 is the equivalent of "due process of law" as used in the federal constitution. *See Crawford v. State,* 285 Md. 431, 451 n. 3, 404 A.2d 244, 254 n. 3 (1979) (citing *Horace Mann League v. Board,* 242 Md. 645, 685, 220 A.2d 51, 73, cert. denied, 385 U.S. 97, 87 S.Ct. 317, 17 L.Ed.2d 195 (1966)).

**22.** The Court, in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), analyzing due process claims, also recognized a balancing test of three factors: (1) the private interest that will be affected by the official action, (2) a balancing of the risks of an erroneous deprivation versus the probable value of additional safe-

*Mullane* revolved around the judicial settlement of a bank's accounts as trustee of a common trust fund. The bank attempted to provide statutory notice by publishing notice in a newspaper, which "set[ ] forth merely the name and address of the trust company, the name and the date of establishment of the common trust fund, and a list of all participating estates, trusts or funds." *Id.* at 310, 70 S.Ct. at 655. The Court found that, while such notice was sufficient for those beneficiaries that could not be ascertained, the notice was insufficient with respect to known beneficiaries "because under the circumstances it [was] not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319, 70 S.Ct. at 660.

Discussing due process, the Court found that the "abstract words of the Due Process Clause . . . at a minimum [ ] require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 313, 70 S.Ct. at 656–57. The Court found that the judicial settlement of the bank's accounts could deprive some beneficiaries of property rights and "hence notice and hearing must measure up to the standards of due process." *Id.* at 313, 70 S.Ct. at 657.

The Court in *Mullane* balanced the interest of the State in the finality of the settlement against the individual interests of the beneficiaries as protected under the Fourteenth Amendment. The Court stated:

"This is defined by our holding that 'The fundamental requisite of due process of law is the opportunity to be heard.' *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363. This right to be heard has little reality

---

guards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens that any additional or substitute procedural requirement would necessitate. *Id.* at 335, 96 S.Ct. at 903. The *Mullane* test of "reasonableness under the circumstances" is, however, the preferred method "when confronted with questions regarding the adequacy of the method used to give notice." *Dusenbery v. United States,* 534 U.S. 161, 168, 122 S.Ct. 694, 699, 151 L.Ed.2d 597 (2002).

or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."

*Id.* at 314, 70 S.Ct. at 657. In the case *sub judice,* appellant received notice of a hearing, but not reasonable notice appropriate to the nature and facts of this particular case.

Examining how to determine whether notice is reasonable or not, the Court in *Mullane* opined:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is *notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357; *Grannis v. Ordean,* 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363; *Priest v. Board of Trustees of Town of Las Vegas,* 232 U.S. 604, 34 S.Ct. 443, 58 L.Ed. 751; *Roller v. Holly,* 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520. *The notice must be of such nature as reasonably to convey the required information, Grannis v. Ordean, supra,* and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly, supra,* and *cf. Goodrich v. Ferris,* 214 U.S. 71, 29 S.Ct. 580, 53 L.Ed. 914."

*Mullane,* 339 U.S. at 314, 70 S.Ct. at 657 (emphasis added). The *Mullane* Court continued, stating:

"*But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.* The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, *compare Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, with *Wuchter v. Pizzutti,* 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially

less likely to bring home notice than other of the feasible and customary substitutes."

*Mullane,* 339 U.S. at 315, 70 S.Ct. at 657–58 (emphasis added).

Maryland courts have held similarly to *Mullane.* We addressed notice in the context of due process rights in *Phillips v. Venker,* 316 Md. 212, 557 A.2d 1338 (1989). *Phillips* concerned a personal injury action in which the judge ruled on a motion for summary judgment during a telephone conference hearing. The facts surrounding the telephone conference gave rise to the lack of notice. Plaintiff's counsel had called the court to determine whether any action had been taken on his request for a continuance. *Id.* at 214, 557 A.2d at 1339. Somehow the call was directed to the judge assigned to hearing the motion for summary judgment, who arranged an immediate telephone conference between the parties. *Id.* at 215, 557 A.2d at 1339. The judge expressed a reluctance to postpone the scheduled hearing and, even though this telephone call was not scheduled for that purpose, the judge immediately conducted a hearing on the motion for summary judgment over the phone. *Id.*

The Court found that under the circumstances of the telephone conference, the notice was not adequate. *Id.* at 221–22, 557 A.2d at 1343. The Court concluded, that "it is axiomatic that [the parties] were entitled to adequate notice of the time, place, and nature of that hearing, so that they could adequately prepare." *Id.* at 222, 557 A.2d at 1343; (citing *Sullivan v. Insurance Comm'r,* 291 Md. 277, 283–85, 434 A.2d 1024 (1981); *Glading v. Furman,* 282 Md. 200, 205–07, 383 A.2d 398 (1978); *Bernstein v. Bd. of Education,* 245 Md. 464, 473, 226 A.2d 243 (1967)). Based on the lack of notice of *when* the hearing would take place, "Counsel for the plaintiffs was not given any meaningful opportunity to review his file, collect his thoughts, or otherwise prepare for oral argument," and the fact "[t]hat he was able to participate in some fashion in the argument the trial judge insisted be held does not suggest that he was able to participate effectively." *Phillips,* 316 Md. at 222, 557 A.2d at 1343.

The Court of Special Appeals addressed due process rights in relation to notice in *Van Schaik v. Van Schaik,* 90 Md.App. 725, 603 A.2d 908 (1992). In *Van Schaik,* a case about custody modification, the court-appointed attorney for the child in question "requested a hearing 'with regard to visitation and other issues.'" *Id.* at 730, 603 A.2d at 910. The trial court scheduled the hearing and provided notice to the parents that stated: "HEARING ON VISITATION AND CHILD'S POS-SESSIONS has been scheduled for March 18, 1991 from 9:00 a.m. to 11 a.m." *Id.* The parents attended the hearing without counsel, presumably because they didn't contest the visitation and property issues, and the only attorney present was the child's counsel. *Id.* The hearing transpired, and at its culmi-nation the court terminated the father's joint custody rights. *Id.* at 730, 603 A.2d at 911. The court took this action even though neither of the parties, nor the child's attorney, had requested a change in custody. *Id.* at 730 n. 4, 603 A.2d at 911 n. 4.

The Court of Special Appeals found that the father "was not given proper notice that matters relating to custody were to be the subject of the hearing at issue." *Id.* at 738, 603 A.2d at 914. The court stated that "[t]he notice in the case at bar did not notify either parent that the court was contemplating making a custody decision." *Id.* at 738–39, 603 A.2d at 915. In support of this holding, the court relied on the *Phillips* Court's holding, as discussed *supra.*

The Court of Special Appeals more recently addressed this issue in *Burdick v. Brooks,* 160 Md.App. 519, 864 A.2d 300 (2004), which, like *Van Schaik,* concerned child custody. In *Burdick,* the trial court sent the mother notice of a status conference, that was to last fifteen minutes. *Id.* at 527, 864 A.2d at 304. At the conference, however, the trial court announced a modification of custody, changing custody of three of the children from the mother to their father. *Id.* at 523, 864 A.2d at 303. The Court of Special Appeals, relying on the *Van Schaik* holding, found that "the notice letter sent to Burdick [the mother] failed to inform her that the court

could make a custody determination at the conference." *Burdick*, 160 Md.App. at 527, 864 A.2d at 305.

In order to determine whether adequate notice was provided in the case *sub judice* it is necessary to re-examine some of the factual circumstances leading up to the March 21, 2005, hearing. The court first addressed the issue of child support at the July 22, 2004, hearing. The resulting order, entered August 5, 2004, as discussed *supra*, directed the father to pay $700.00 per month retroactive to October 1, 2003 through December 31, 2004. Per the order, "*subject to further review and/or Order of this Court*, [Katherine's] Mother, [appellant], shall not be obligated to pay child support, either *in arrears* or prospectively because of her marginal income. . . ." [Emphasis added]. In addition, the order provided "that the matter of the parents' respective child support obligations on behalf of the child shall be subject to further review by this Court after December 31, 2004." The schedule for the next hearing was stated as:

"*Next Hearing:* **Permanency Planning hearing on September 22, 2004, at 11:30 a.m. in Courtroom 19**"

The permanency planning hearing was held on September 22, 2004,[23] and there is no evidence that the child support issue was addressed.[24] The resulting Permanency Planning Hearing and Order for Continued Commitment did not address the subject of child support at all. The order simply changed the permanency plan to "Another Planned Permanent Living Ar-

---

**23.** There is a discrepancy in the dates contained in the record. The docket information lists the hearing, as well as the resulting order, taking place and being entered, respectively, on September, 22, 2004. This is in line with the scheduling discussion as evidenced by the transcript from the July 22, 2004, hearing as well as the August 5, 2004, order. Whereas, the resulting order is stamped as entered on September 21, 2004. This discrepancy is not dispositive of the outcome of the case.

**24.** The transcript from the September 22, 2004, hearing is not part of the present record and neither party contends that the child support issue was addressed at that particular hearing. Nor does the docket information in the record reflect any evidence of the matter of child support for the September 22, 2004, hearing.

rangement (AAPLA), with Independent Living Services." At the end of this order the schedule for the next hearing was stated as:

"**NEXT HEARING: March 21, 2005, 8:30 a.m., Courtroom # 19**"

This was the last "notice" that appellant received prior to the March 21, 2005, hearing, concerning any hearing involving her daughter, Katherine. It did not provide any notice that the issue of child support would be addressed at that March 21, 2005, hearing. As evidenced by the subject matter (permanency planning) of the September 22, 2004, hearing and resulting order, the March 21, 2005, hearing was scheduled to be a permanency plan review hearing pursuant to § 3–823(h) of the Courts and Judicial Proceedings Article.

The transcript from the March 21, 2005, hearing indicates the confusion resulting from the child support issue being raised without prior notice. Counsel for the father raised the issue of child support because the State still had not distributed the money from the August 5, 2004, *Pendente Lite* Order." After a long, convoluted, discussion between the court, the father's counsel and the State,[25] the court determined that the father's child support contribution as per the August 5, 2004, order would satisfy his obligation and that he would have no further obligation to pay child support due to his incarceration, which would last beyond Katherine turning twenty-one.

The court then addressed appellant's counsel, asking whether appellant was "in a position to pay child support" at the time. Counsel for appellant stated that appellant was not in a position to pay child support, but after addressing appellant personally, the court determined that she would be able to pay child support per the Guidelines. As we have indicated,

---

25. The State as well as the court system were apparently unaccustomed to receiving money from parents in a CINA case in which the child is removed from parental custody. Therefore, it appears that the Montgomery County Department of Health and Human Services dealt with this as an isolated situation and eventually worked out how to follow the mandate of the August 5, 2004, order.

counsel for appellant objected, stating that *"we weren't sched-uled to be here to determine whether she has a child support obligation."* (Emphasis added). The court then entered the order over counsel's continuing objection. Finally, on April 13, 2005, the court denied appellant's March 24, 2005, Motion for Reconsideration of the order to pay child support.

It is evident from the facts in the case *sub judice,* that appellant was not given adequate notice, appropriate to the facts and nature of the case, that the matter of child support would be addressed at the March 21, 2005, permanency plan review hearing.

Appellee argues that appellant's July 21, 2004, Motion for Establishment of Child Support and the August 5, 2004, *"Pendente Lite* Order" provide adequate notice that child support would be addressed. We disagree. The fact that appellant filed a Motion for Establishment of Child Support on July 21, 2004, does not put her on notice that the issue would be addressed at the March 21, 2005, hearing. That particular motion was addressed and disposed of at the July 22, 2004, hearing. In fact, the August 5, 2004, order indicates that the court found that "subject to further review and/or Order of this Court, [Katherine's] Mother, *[appellant ], shall not be obligated to pay child support, either in arrears or prospec-tively because of her marginal income ... "* and "that the matter of the parents' respective child support obligations on behalf of the child shall be subject to further review by this Court after December 31, 2004." (Emphasis added). A court is required to provide adequate and sufficiently specific notice of when the matter of child support will be reviewed. It failed to do so in this case. That the order was *pendente lite* does not, in and of itself, provide notice *ad infinitum.*

### III.  Conclusion

In vacating the decision of the Circuit Court for Montgom-ery County requiring appellant to pay child support, we find that the notice in the case *sub judice* was not adequate to notify appellant that the court would be addressing the matter of child support at the March 21, 2005, hearing. Parties are

entitled to adequate notice of the subject matter of a hearing, so that they may prepare to address the issues. The Circuit Court for Montgomery County, however, did not err in its application of the Guidelines in calculating child support, where the child is in the custody of a government agency except that in the use of such guidelines, the amount established may not exceed actual costs. A trial court may apply the Guidelines to calculate child support in CINA cases so long as the amount is capped at costs. For the reasons stated herein, we vacate the judgment of the Circuit Court for Montgomery County that requires appellant to pay child support. This holding is without prejudice for a trial court in future proceedings, upon proper notice, to address the child support issue.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY VACATED AS INDICATED ABOVE. COSTS IN THIS COURT TO BE PAID BY THE APPELLEE.**